# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GREGORY TEMPLE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE CITY OF CHICAGO, a municipal ) <br> Corporation, and ROVERT CAVALLONE, ) <br> ) <br> Defendants. ) | No. 14 C 4384 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

Gregory Temple alleged excessive force against Defendant Robert Cavallone and failure to intervene against Defendant Brett Kellam, and, after Temple voluntarily dismissed Kellam, he tried his claim against Cavallone to a verdict in favor of Cavallone, with judgment entered on January 13, 2016. On February 9, 2016, Defendants[1] filed a Bill of Costs, seeking $5,781.86 as the prevailing parties pursuant to Federal Rule of Civil Procedure 54(d). Temple filed timely objections on February 19, 2016, arguing that the requested costs are excessive and constitute financial hardship. Having reviewed the parties' submissions and finding that the requested costs would impose financial hardship on Temple, the Court taxes costs in favor of Defendants and against Temple in the amount of $250.00.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 54(d), unless a federal statute, the Federal Rules, or the Court provides otherwise, the prevailing party in litigation is entitled to costs. Pursuant to 28 U.S.C. § 1920, the Court may tax as costs certain fees, including fees for service of summons

---

[1] The bill of costs at issue names the claiming party as "Defendants." Doc. 48. Temple does not challenge whether Kellam, or the City of Chicago, named as a defendant for indemnity purposes, is entitled to costs.

and subpoenas, fees for "transcripts necessarily obtained for use in the case," and fees for "exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." The prevailing party is presumptively entitled to costs. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005). The prevailing party maintains the burden of establishing that the potentially recoverable costs it incurred were reasonable and necessary. *Trs. of Chi. Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009). If that burden is satisfied, the losing party bears the burden of showing that the costs are inappropriate. *Beamon*, 411 F.3d at 864. The denial or reduction of costs may be warranted based on the prevailing party's misconduct or the losing party's indigence. *See Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003). The Court enjoys "wide discretion in determining and awarding reasonable costs." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 642 (7th Cir. 1991).

## ANALYSIS

The Court first considers Defendants' requested costs and Temple's objections to them and then addresses whether the allowable costs should be reduced based on Temple's arguments that they will impose an exceptional financial hardship on him.

### I. Special Process Server Fees

First, Defendants seek $502.50 for service of summons and subpoenas, comprised of $385.00 for service of subpoenas for four third-party witnesses—two emergency room doctors, Dr. Olusola Balogun and Dr. Steven Nanini, Temple's daughter, Nicole Temple ("Nicole"), and Temple's niece, Kim Causley—and $117.50 for related mileage. Fees charged for serving subpoenas may not exceed the U.S. Marshal Service's current rate, which is $55.00 per hour. *Allen v. City of Chicago*, No. 09 C 243, 2013 WL 1966363, at *3 (N.D. Ill. May 10, 2013).

2

Temple argues that Defendants' use of special process servers to serve their subpoenas was unreasonable and unnecessary because Dr. Nanini and Dr. Balogun likely often receive subpoenas as emergency room doctors, Nicole is Temple's daughter, and Causley is a court reporter.[2] Serving subpoenas on a third party witness is to be expected, even if the witness is cooperative. *See Maior v. Koletsos*, No. 92 C 1131, 1993 WL 350203, at *1 (N.D. Ill. Sept. 10, 1993) (holding it was reasonable to serve third-party witnesses so that it is certain they appear, but service fees must be within reason); *but see Kristofek v. Vill. of Orland Hills*, No. 11 C 7455, 2014 WL 7145543, at *4 (N.D. Ill. Dec. 15, 2014) (disallowing request for fee of U.S. Marshal's service where prevailing parties acknowledged that third party subpoena could have been mailed and provided no justification for service). Defendants had the right to effect personal service on third party witnesses, and unlike in *Kristofek*, Defendants do not admit that they could have served subpoenas via mail. *See Kristofek*, 2014 WL 7145543, at *4 ("[d]efendants acknowledge that subpoenas are routinely mailed"). Therefore, Defendants can recover their costs for serving the subpoenas to the emergency room doctors, Nicole, and Causley, where the $55.00 per hour rate is reasonable.

Temple also argues that Defendants cannot recover mileage charges for personal service because there is no documentation showing the charges are reasonable. Fees associated with service travel costs and mileage are recoverable. *See* 28 C.F.R. § 0.114(c). But Defendants have not provided documentation showing the addresses where service took place, the mileage traveled, or the time spent, and therefore they have not shown that any of the mileage charges for personal service were reasonable and recoverable. *See Williams*, 2015 WL 3759753, at *4

---

[2] Temple does not challenge whether it was reasonable for Defendants to repeat service (or attempts at service) on Dr. Nanini and Causley. The Court notes that had Temple argued against service fees for this reason, courts are divided on whether costs should be awarded for unsuccessful attempts at service. *See Williams v. Fico*, No. 11 C 1105, 2015 WL 3759753, at *4 (N.D. Ill. June 15, 2015) (allowing recovery, collecting cases).

(denying costs for mileage where bill of costs did not provide address of service, mileage information, or calculate mileage).

The Court therefore reduces Defendants' costs for special process service, allowing only $385.00 for service fees.

## II. Deposition Costs

Second, Defendants seek $3,486.65 for depositions, comprised of $2,166.65 for transcripts, $720.00 in attendance fees for court reporters at depositions, and $600.00 for a videographer at Temple's deposition. Section 1920(2) allows recovery of fees for depositions that were necessarily obtained for use in the case, and this is understood to encompass fees associated with written and video transcription where reasonable and necessary. *See Little v. Mitsubishi Motors N. Amer., Inc.,* 514 F.3d 699, 702 (7th Cir. 2008).

Temple argues that Defendants cannot recover costs for the depositions of Dr. Balogun, Dr. Nanini, Nicole, and Causley, claiming the depositions were unnecessary because the witnesses did not testify at trial. Deposition fees are recoverable if the depositions were reasonably and prudently obtained at the time. *Nat'l Org. for Women, Inc. v. Scheidler*, 750 F.3d 696, 699 (7th Cir. 2014). Here, the Court has no way of determining whether the depositions of Dr. Balogun, Dr. Nanini, Nicole, or Causley were necessary to the case or reasonably and prudently obtained. Defendants did not set forth an explanation as to why the depositions were taken in the first place, instead relying solely on the invoices for the depositions to support their request. And as Temple points out, the deposition transcripts were not used at trial. Without more, the Court will disallow the transcript and court reporter attendance costs, totaling $1,479.95, for these four depositions. *See Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 969 (N.D. Ill. 2010) (where the prevailing party has failed to substantiate that all of its

4

costs within a category were necessary and reasonable, the court reduces "the costs to the level supported by [the party's] proof—even if that is zero").

Temple next argues that Defendants should only be allowed to recover costs for Cavallone's and Kellam's deposition transcripts at a rate of $0.90 per page, not the $2.25 per page rate Defendants seek, because the supporting invoices state the transcripts were copies, not originals. The recoverable cost for transcripts is limited to the regular copy rate established by the Judicial Conference of the United States in effect at the time the transcript or deposition was filed unless another rate was previously provided for by order of the Court. N.D. Ill. L.R. 54.1(b). Since 2012, the regular copy rate is $3.65 per page for an original and $0.90 for a copy. *See* Maximum Transcript Rates – All Parties (Per Page), *available at* http://www.ilnd.uscourts.gov/Pages. If a deposition transcript is the only set the prevailing party received for the deponent, then the transcript is considered an original and may be taxed at the original transcript rate. *Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 38 F.3d 1429, 1441 (7th Cir. 1994). Defendants identify the Cavallone and Kellam transcripts as originals in their supporting table laying out deposition costs, but the invoices offered as support for costs indicate that the transcripts are copies of transcripts previously sent in "e-tran" format shortly after the depositions. Where Defendants only seek reimbursement for one full version of the transcripts, and not e-tran versions, the Cavallone and Kellam transcripts are most analogous to original transcripts within the meaning of Local Rule 54.1. *See Pezl v. Amore Mio, Inc.*, No. 08 C 3993, 2015 WL 2375381, at *2 (N.D. Ill. May 13, 2015) (holding the only transcripts provided to the prevailing party were to be taxed as originals even though their invoices labeled them as "copies"). Therefore, the Court finds the $2.25 per page rate appropriate.

5

Temple further argues that Defendants have inflated the number of pages of the deposition transcripts by including word indexes, but he provides no support. To the contrary, after review of the deposition transcripts, the Court finds that Defendants excluded word indexes from the number of pages for which they seek costs; thus, the Court overrules this objection.

In addition to transcript fees, Temple also objects to the requested court reporter fees. First, he objects to the $600.00 videographer fee for his deposition because Defendants did not use the video-recording at trial. Temple was present throughout trial and testified in person at trial. Indeed, there is no indication that at the time of his deposition there was a risk he would be unavailable at trial. Therefore the Court finds that it was not reasonably necessary to have Temple's deposition in video form. *See Chi. Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, No. 07 CV 623, 2014 WL 125937, at *4 (N.D. Ill. Jan. 14, 2014) (not allowing video-recording fees for witnesses who were not shown to have been unavailable); *Lawson v. Sun Microsystems, Inc.*, No. 107CV00196RLYMJD, 2016 WL 231317, at *3 (S.D. Ind. Jan. 19, 2016) (video-recording plaintiff expected to testify at trial was not reasonable and necessary). The Court therefore disallows the $600.00 videographer fee.

Temple also objects to paying the $200.00 court reporter attendance fee for his own deposition, claiming it exceeds the published $110.00 half day rate, which is for depositions of four hours or less. *See* Maximum Transcript Rates—Transcript Costs, http://www.ilnd.uscourts.gov/Pages. Because the court reporter's invoice states that the deposition took exactly four hours, the Court reduces the fee by $90.00 to $110.00.

Temple finally argues that he should not pay the $120.00 court reporter attendance fee for the "late cancellation" of Nicole's deposition. Because the Court has disallowed the costs for the

transcripts and court reporter fees arising from Nicole's deposition, the Court has addressed this charge.

In sum, the Court taxes $1,316.70 in costs for depositions.

**III.    Witness Fees**

Third, Defendants seek $251.26 in witness fees. Witnesses at depositions are entitled to attendance fees for testifying, capped at $40.00 per day plus additional expenses for travel. 28 U.S.C. § 1821(b). Temple does not object, but Defendants submit invoices showing Dr. Balogun, Dr. Nanini, Nicole, and Causley all received witness fee checks in excess of $40.00. The excess above $40.00 may have accounted for travel costs, but Defendants have not submitted documentation to allow the Court to determine the reason for the excess or the method and distance of the witnesses' travel if travel expenses are the reason. As the prevailing parties, Defendants bear the burden to substantiate their expenses. *See Thayer v. Chiczewski*, No. 07 CV 1290, 2010 WL 3087447, at *3 (N.D. Ill. Aug. 4, 2010) (reducing witness fees to $40 per witness where prevailing party did not provide receipts for transportation costs and therefore failed to meet burden). Defendants have not substantiated their claim for witness fees above $40.00 here.

Therefore, the Court will only award $40.00 per witness, taxing a sum total of $160.00 in witness fees as costs.

**IV.    Exemplification and Copying Costs**

Fourth, Defendants seek $24.75 for copying and $1,516.70 for other costs that also relate to exemplification. A prevailing party can recover "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). The Court considers whether the information being presented actually required the means used by the moving party, determining if the exemplification was vital, just a

7

convenience, or merely an extravagance. *See Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 428–29 (7th Cir. 2000).

Temple argues that Defendants should not recover the $24.75 requested for creating one set of copies of several docket entries from CM/ECF in this case. Maintaining a paper file of electronically served documents is reasonable, and Defendants only seek to recover copy charges for twenty-nine of forty-nine docket entries at a reasonable rate of fifteen cents per page. *See Dishman v. Cleary*, 279 F.R.D. 460, 469 (N.D. Ill. 2012). The Court will not reduce Defendants' costs here.

Defendants also seek $1,516.70 for "other costs." Doc. 48. Temple argues that Defendants' large demonstrative map, which cost $1,471.70 and is included as an "other cost," was unnecessary because Defendants' counsel minimally used the demonstrative and it was not presented to the jury as an exhibit. The demonstrative's birds-eye view of city streets was only useful for a disputed issue on the periphery—the directional movement of Temple's vehicle compared to Cavallone and Kellam's vehicle—and was not probative of the main issue at trial—whether Cavallone or Kellam used excessive force on Temple after all three stepped out of their respective cars. Finding that the map was not vital to the trial on excessive force, the Court cannot award the costs of its creation as reasonable and necessary. *See Baxter Int'l, Inc. v. McGaw, Inc.*, No. 95 C 2723, 1998 WL 102668, at *5 (N.D. Ill. Mar. 3, 1998) (demonstratives used to illustrate points in opening statement were not reasonably necessary and their costs could not be recovered); *cf. Olivarius v. Tharaldson Prop. Mgmt. Inc.*, No. 08 C 463, 2012 WL 1117468, at *5 (N.D. Ill. Apr. 3, 2012) (demonstratives used at opening and closing were useful for showing timing of events and therefore their costs could be recovered).

Temple's also argues against the other exemplification costs because Defendants have not shown that six sets of "Binders" and three sets of "Spiral Bound Demonstrative Exhibits," costing $45.00 total, were necessary to the case. Defendants need not provide an overly detailed description of the reproduction work they seek to recover as costs, but they do need to provide a breakdown and description sufficient to allow the Court to understand what reproduction costs they are seeking. *See Se-Kure Controls, Inc. v. Vanguard Prods. Grp., Inc.*, 873 F. Supp. 2d 939, 947 (N.D. Ill. 2012). Defendants' single-word explanation "Binders," without any further explanation or invoice, is too vague for the Court to discern whether the binders were necessary or merely for convenience—Courts in this district have found similarly short descriptions to be too vague to meet the standard for recovery. *See IWOI, LLC v. Monaco Coach Corp.*, No. 07 C 3453, 2013 WL 870208, at *4 (N.D. Ill. Mar. 6, 2013) (description of "Photocopies" was too vague to allow court to discern whether photocopying was necessary or merely for attorney convenience). On the other hand, Defendants' description for three sets of spiral bound trial exhibits is sufficiently detailed in comparison, and this line item could be reasonable if they were prepared for presenting evidence at trial, with one copy for trial use, one copy for opposing counsel, and one copy for the Court. *See Smith v. Chicago Transit Auth.*, No. 12 C 8716, 2015 WL 2149552, at *7 (N.D. Ill. May 6, 2015) (three exhibit sets—for trial judge, trial use, and opposing counsel—was reasonable and necessary). But Defendants did not provide the Court with spiral bound copies of exhibits during trial, leaving the Court unsure of the purpose of these materials. Because the Court is unable to discern whether the materials were necessary to the litigation or instead were made for the convenience of Defendants' counsel, a percentage reduction is appropriate. *See Se-Kure Controls, Inc.*, 873 F. Supp. 2d at 948–49 (collecting cases). Therefore, the Court reduces the requested costs for the binders and spiral bound exhibits

by 50%, allowing Defendants to recover $22.50. *See id.* (noting percentage reductions between 50 and 100 percent for vague copying substantiation).

The Court therefore taxes $47.25 for copying and exemplification costs. In total, the Court reduces Defendant's requested costs by $3,872.91, and Defendants' allowable costs are $1,908.95.

**V.     Financial Hardship**

Having determined Defendants' allowable costs, the Court addresses Temple's argument that paying Defendants' allowable costs will create a significant financial hardship. The Court may consider Temple's inability to pay when awarding costs. *Bonds v. Fizer*, 69 F. Supp. 3d 799, 808 (N.D. Ill. 2014). If there is an exceptional financial hardship, it is within the Court's discretion to deny costs. *See Rivera v. City of Chicago*, 469 F.3d 631, 635 (7th Cir. 2006). In order to overcome the presumption of awarding allowable costs, the losing party must show a present and future inability to pay costs, supported by an affidavit and documentary evidence of his income and liabilities. *See Kristofek*, 2014 WL 7145543, at *2–3. Upon such a showing, the Court may then decide whether to reduce or deny costs, considering the amount of the costs, the losing party's good faith in bringing the claims, and the difficulty of the issues raised. *See Jones v. Chicago Bd. of Educ.*, No. 11 C 8326, 2013 WL 2422653, at *1 (N.D. Ill. June 3, 2013). Temple provides an affidavit and a June 2013 schedule of current expenses from a prior bankruptcy filing to support his claim of financial hardship. While the schedule of expenses is three years old, he updates the schedule with his affidavit, stating he currently receives $2,143.50 monthly in pension and retirement income, $257.00 less than he did in 2013. He also states that while his monthly expenses have mostly remained the same as in 2013, they are $300.00 greater than in 2013 and now total $2,285.00 due to what he claims are increased utility, food, and

transportation costs—in 2013 he had monthly expenses of $1,985.00, comprised of $1,264.00 for mortgage payments; $75.00 for electricity and heating; $20.00 for water, sewer, and garbage services; $40.00 for cell phone and internet payments; $70.00 for food, $10.00 for clothing; $10.00 for laundry and dry cleaning; $10.00 for medical and dental expenses; $70.00 for transportation expenses, including gas, tolls, parking fees, fees and licenses, repair, and bus and train costs; $91.00 for homeowner's insurance; and $257.00 for tax payments; and $18.00 for eye care and haircuts. Finally, he states he now pays $415.00 per month in satisfaction of his bankruptcy resolution and will continue to do so through June 2018. While Temple's schedule of expenses is unorthodox, the Court can determine Temple's current income and expenses from the schedule and his affidavit, and, therefore, the Court finds that Temple has supplied competent evidence of his current financial situation and met his burden of providing sufficient documentary evidence for the court to analyze his claim of hardship. *See Hernandez-Martinez v. Chipotle Mexican Grill, Inc.*, No. 11 C 4990, 2013 WL 2384251, at *5 (N.D. Ill. May 30, 2013) (holding plaintiff's documentation, including attestation to income, assets, and expenses, was adequate for court to determine that she was unable to pay for assessed costs).

Although Temple's monthly income exceeds the federal poverty guidelines, *see* https://aspe.hhs.gov/poverty-guidelines, he is unemployed, retired, and has a negative monthly cash flow of $556.50, including monthly bankruptcy payments. The Court thus finds that he is currently incapable of paying costs. *See id.*; *Mays v. BNSF Ry. Co.*, No. 10 C 153, 2013 WL 6645396, at *2 (N.D. Ill. Dec. 17, 2013) (finding inability to pay costs where half of the losing plaintiff's monthly income went to paying child support, his rent was nearly half of his monthly income, he owed additional money for past due debts, and he was unlikely to increase his income with other outside sources).

Temple must also show that he "is incapable of paying the court-imposed costs . . . in the future." *Rivera,* 469 F.3d at 635 (citation omitted) (internal quotation marks omitted). Temple argues that his current inability to pay will continue because he is a sixty-four-year-old retired produce worker, so his future income prospects are slim. While he will not have to pay $415.00 per month to the bankruptcy trustee in two years, by that time he will be sixty six and will still have an expected monthly negative net cash flow if his current expenses remain relatively stable or incrementally increase, which they did over the previous three years. Further, while Temple previously received money from family, he asserts he no longer receives such assistance. On the other hand, Temple has not indicated that he will not continue to collect his pension and retirement income going forward. It is close, but due to Temple's age and retired status and his negative net income even after he no longer needs to make payments to his bankruptcy trustee, the Court finds that Temple has established an inability to pay costs in the future as well. *Compare Tallman v. Freedman Anselmo Lindberg LLC*, No. 11-3201, 2013 WL 4041412, at *2 (C.D. Ill. Aug. 7, 2013) (sixty-three-year-old retired security officer who also cared for his mother established his inability to pay costs at present or in the future where he received $700 in social security income monthly, which covered his expenses before food and gas but would make it difficult for him to pay $3,357.82 in allowable costs) *with Moultrie v. Penn Aluminum Int'l, LLC*, No. 311CV00500DRHPMF, 2014 WL 87830, at *1-2 (S.D. Ill. Jan. 9, 2014) (sixty-eight-year-old retiree with more than $2,000 in monthly income and $23,000 in assets failed to substantiate that he would be unable to pay costs in future where he relied solely on his retirement for his future inability to pay) *and Johnson v. Allstate Ins. Co.*, No. 07-CV-0781-SCW, 2012 WL 4936598, at *12 (S.D. Ill. Oct. 16, 2012) (losing party's $1,400 monthly income was less than monthly expenses, but it would exceed monthly expenses in eighteen months after

three debts were paid off, and money currently allocated to debt service could be reallocated to paying off costs substantially reduced by court).

The Court therefore considers the amount of allowable costs, Temple's good faith, and the issues raised in Temple's lawsuit. The allowable costs are less than the costs sought by Defendants that Temple claimed would cause extreme hardship, but even the reduced award would be difficult for Temple to timely pay. Monthly, Temple's liabilities for basic needs, such as housing, heat, food, and medical care, already exceed his income, and the allowable costs would only increase this discrepancy in net monthly income. While he eventually will not have to pay further bankruptcy payments, that relief is two years away. As to Temple's good faith in bringing his suit and the validity of his claims, the Court notes that because he sued Defendants, Temple obviously had a hand in the expenses of Defendants. But his claims were not frivolous. Trial testimony highlighted that Temple's case was one of "he said" versus "he said," and although Cavallone's version carried the day, Temple's version was strong enough to require two days of deliberation on the claim against Cavallone. Therefore the Court will not ignore Temple's financial limitations—Temple has overcome the presumption that costs must be awarded to Defendants.

Still, while Temple has documented his inability to pay the allowable costs, the Court believes that Temple should still make a contribution to costs he has forced Defendants to expend in order to defend themselves. *See Hernandez-Martinez*, 2013 WL 2384251, at *6 (finding an inability to pay allowable costs but requiring losing party to contribute to costs). Temple can find room to pay costs by cutting back on cellular phone service, the internet, and new clothing. *See Heatherly v. Portillo's Hot Dogs, Inc.*, No. 11 C 8480, 2013 WL 5951758, at *2 (N.D. Ill. Nov. 7, 2013) (rejecting losing party's claim that she was unable to pay costs and

13

noting that she could cut back on high laundry, gas, cable, and cell phone expenses to pay a small amount per month to resolve costs). The Court therefore orders Temple to pay costs of $250.00 (or approximately a five month's-worth of cellular phone service, internet, and new clothes that Temple attributes to his monthly expenses).

## CONCLUSION

For the foregoing reasons, the Court taxes $250.00 in favor of Defendants and against Temple.

Dated: July 1, 2016

SARA L. ELLIS
United States District Judge